118 P.3d 136

**Charles F. KARLE and Valerie A. Karle, husband and wife, Plaintiffs–Third Party Defendants–Respondents,**

v.

**Doug VISSER and Vicki Visser, husband and wife, Defendants,**

and

**Arthur M. Bistline, Third Party Claimant–Appellant.**

No. 30666.

Supreme Court of Idaho, Boise, April 2005 Term.

July 22, 2005.

Arthur M. Bistline, Coeur d'Alene, for appellant.

Janet E. Jenkins, Sandpoint for respondents.

SCHROEDER, Chief Justice.

This case involves an appeal from a district court decision that Arthur M. Bistline (Bistline) did not have a valid security interest in a pending action to collect on a promissory note.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 1994, Doug and Vicki Visser (the Vissers) entered into an agreement to sell their dismantling and auto salvage business to Charles and Valerie Karle (the Karles) for the sum of $85,000.00. The overall transaction involved several different agreements, including both an Asset Transfer Agreement (ATA) and rental agreement to lease five acres of the Vissers' property associated with the salvage business. The lease provided that the Karles would pay a monthly rent of $1,200.00 in exchange for the Vissers making certain building and road improvements to the property and signing a covenant not to compete agreement. The Karles made a down payment of $20,000 and executed a promissory note for $65,000.00 plus interest at a rate of 9% per annum to be paid in monthly installments of $600.00.

The Karles made the monthly payments on both the lease and promissory note until December of 2000 at which time differences arose between the parties. The Karles filed suit against the Vissers for various claims, including breach of contract for failure to complete the road and building improvements under the lease. The Vissers answered and counterclaimed on the basis the Karles had breached the ATA and failed to pay rent under the lease for the months of January and February 2001.

A jury trial on these claims was held. The jury returned a verdict awarding damages in the amount of $53,932.50 to the Karles and ordering a reduction in their rent until the pledged road and building improvements were completed. The jury also awarded the Vissers $9,900.00 on their breach of contract claim under the ATA. Judgment was entered reflecting both these awards on April 15, 2002.

From April to July of 2002, the Karles continued to make monthly installment payments on the promissory note and paid the abated rent. A writ of execution reflecting the judgment was issued. At the time the amount of principal and interest owed by the Karles to the Vissers was approximately $51,520.55. On July 19, 2002, a Sheriff's sale was held. The Karles credit bid the sum of $10,500 for the judgment in favor of the Vissers and credit bid the sum of $22,500.00 on the Vissers' right title and interest in the ATA. The Sheriff refused to accept a credit bid by the Vissers on the ATA. The Vissers subsequently filed a motion to set aside the Sheriff's sale or, alternatively, to accept their credit bid. The district court denied this motion. After the credit bid was applied, the judgment in favor of the Karles for $53,932.50 was reduced to $20,923.50. When interest and fees were added, the amount left owing to the Karles was $26,371.00 as of September 18, 2003.

On January 8, 2003, Bistline entered into a Security Agreement (SA) with the Vissers in which he attempted to take a security interest in the promissory note as collateral for payment of the Vissers' outstanding and future attorneys' fees owed to Bistline. The SA identified the collateral as the promissory

note and granted Bistline a security interest in:

> [R]ight title and interest in the collateral, and all proceeds from the sale or transfer of the collateral, and any judgments resulting from the collection of the Note that is the collateral, and any payments made pursuant to the terms and conditions of the collateral, no matter who hands those proceeds from the sale or transfer of the collateral, and judgments resulting from the collection of the Note that is the collateral, and payments made pursuant to the terms and conditions of the collateral, may go.

A UCC Financing Statement containing a description of the collateral and the security interest was filed with the Idaho Secretary of State on January 9, 2003.

On January 27, 2003, the Vissers filed a complaint against the Karles for alleged delinquency in payments on the promissory note. *Visser v. Karle*, Bonner County Case No. CV 03–00130. The Karles answered, arguing the note's obligations were canceled by virtue of the Sheriff's sale on July 19, 2002. On August 4, 2003, the district judge granted summary judgment in favor of the Vissers on Case No. CV 03–00130, finding the only issues to be determined were the remaining principal balance owed on the note and the amount of costs associated with collection on the note.

On December 18, 2003, the Karles filed another writ of execution with the Sheriff of Bonner County, this time against the Vissers' pending collection action, to collect on the remainder of their prior judgment. In response to the levy, Bistline filed a third party claim of exemption on behalf of the Vissers and himself. The Karles contested the claim of exemption. A hearing was held on the matter. The district court determined that Bistline did not have a valid security interest in the Vissers' pending action to collect on the note. Bistline appealed. At issue on appeal is whether a pending action to collect on a promissory note constitutes proceeds within the meaning of Idaho Code § 28–9–102(a)(64) and whether the SA adequately took an interest in such proceeds.

## II.

### STANDARD OF REVIEW

■ The Supreme Court reviews questions of law de novo. *State, Dep't of Health & Welfare v. Housel*, 140 Idaho 96, 100, 90 P.3d 321, 325 (2004)(citing *State, Dep't of Fin. v. Res. Serv., Co.*, 130 Idaho 877, 880, 950 P.2d 249, 252 (1997)).

## III.

### AN ACTION TO COLLECT ON A PROMISSORY NOTE CONSTITUTES PROCEEDS WITHIN THE MEANING OF IDAHO CODE § 28–9–102(a)(64)

■ Bistline argues that the right to sue for collection on a note constitutes proceeds such that his interest in the promissory note automatically attached to the pending collection action. The Karles assert that Bistline failed to take a security interest in either a "chose in action" or "general intangibles" such that he did not take a valid and enforceable security interest in *Visser v. Karle*, Bonner County Case No. CV–03–00130.

The scope of Title 28, Chapter 9 of the Idaho Code governs secured transactions in promissory notes. Idaho Code § 28–9–109(a)(3)(2004). Creation of a valid and enforceable security interest requires that:

(1) Value has been given;

(2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(3) One (1) of the following conditions is met:

(A) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;

(B) the collateral is not a certificated security and is in the possession of the secured party under section 28–9–313 pursuant to the debtor's security agreement;

(C) the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under section 28–8–301 pur-

suant to the debtor's security agreement; or

(D) the collateral is deposit accounts, electronic chattel paper, investment property, letter of credit rights, or electronic documents, and the secured party has control under section 28–7–106, 28–9–104, 28–9–105, 28–9–106 or 28–9–107 pursuant to the debtor's security agreement.

Idaho Code § 28–9–203(b)(2004).

■ A valid and enforceable security agreement requires a sufficient description of the collateral to which the security interest will attach. Collateral is defined as "property subject to a security interest or agricultural lien" and includes any "proceeds" of the collateral. Idaho Code § 28–9–102(a)(12)(A)(2004); Idaho Code § 28–9–315(a)(2)(2001). Proceeds are defined as:

(A) whatever is acquired upon the sale, lease, license, exchange or other disposition of collateral;

(B) whatever is collected on, or distributed on account of, collateral;

(C) *rights arising out of collateral;*

(D) to the extent of the value of the collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or

(E) to the extent of the value of collateral and to the extent payable to the debtor or secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

Idaho Code § 28–9–102(a)(64)(emphasis added). This is an expanded definition of proceeds and "includes additional rights and property that arise out of collateral, such as distributions on account of collateral and claims arising out of the loss or nonconformity of, defects in, or damage to collateral. The term also includes collections on account of 'supporting obligations,' such as guarantees." Official Comment, Idaho Code § 28–9–101(4)(f)(2001).

A general intangible is a particular type of collateral and is defined as:

[A]ny personal property, *including things in action,* other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter of credit rights, letters of credit, money, and oil and gas, or other minerals before extraction. The term includes payment intangibles and software.

Idaho Code § 28–9–102(a)(42)(2004)(emphasis added). Idaho's Official Comments note that "things in action' includes rights that arise under a license of intellectual property, including the right to exploit the intellectual property without liability for infringement." Official Comment I.C. § 28–9–102(5)(d)(2001).

The Official Comments to Idaho's Revised U.C.C. and Idaho case law offer little guidance as to whether a pending action to collect on a promissory note is more akin to proceeds or a general intangible. The federal and bankruptcy courts have provided some guidance in this area. *In re Wiersma,* 283 B.R. 294, 300 (D.Id.2002) held that a debtor's contract claims against a third party constitute a "thing in action" and a general intangible under Idaho's U.C.C. According to the court, "a lawsuit, and any recovery on it, is considered to be a[sic] general intangible for Article 9 purposes." *Wiersma,* 283 B.R. at 303 (citations omitted); *see also Bakersfield Westar Ambulance, Inc. v. Cmty. First Bank,* 123 F.3d 1243, 1246 (9th Cir.1997)(a bank's interest in claim against depositor's account constitutes the intangible property right of a chose in action); *In re Richardson,* 216 B.R. 206, 219 (S.D.Ohio 1997)(property right known in law as a "chose in action" or "thing in action" falls under definition of a general intangible); *In re Housecraft Indus., USA, Inc.,* 155 B.R. 79, 86 (D.Ver.1993)(chose in action arising out of a deposit account is an intangible property right).

Several states have found that a party may take a security interest in proceeds arising out of a chose in action or settlement of a pending lawsuit. *See e.g. Gold Medal Prods., Inc. v. Love Enters., Inc.,* 766 S.W.2d 759 (Mo.App.1989); *Bd. of County Comm'rs of County of Adams v. Berkeley Vill.,* 40 Colo.

App. 431, 580 P.2d 1251 (1978); *Friedman, Lobe & Block v. C.L.W. Corp.*, 9 Wash.App. 319, 512 P.2d 769 (1973). However, in each of these cases the security agreement specifically listed the pending lawsuit as collateral. The Supreme Court of Washington, however, has held that proceeds and general intangibles are not mutually exclusive. *Rainier Nat'l Bank v. Bachmann*, 111 Wash.2d 298, 757 P.2d 979, 984 (1988) cited in *Secured Transactions*, 68A Am.Jur.2d § 85 at 99 (1993)(rights may be both "proceeds" and "general intangibles"). In *Rainier*, a banks security interest in crops, dairy cattle and all proceeds was found to attach to government payments for cattle destroyed under a Dairy Termination Program (DTP). Relying on *Osteroos v. Norwest Bank Minot, N.A.*, 604 F.Supp. 848, 849 (D.N.D.1984), the Washington Supreme Court held that the government payments "constitute general intangibles as a category of collateral" and also *"constitute proceeds of crops so that failure to mention general intangibles in a security agreement or financing statement is not fatal."* *Rainier*, 757 P.2d at 984 (emphasis added); *see also Effective Communications W., Inc. v. BOCES*, 84 A.D.2d 941, 942, 446 N.Y.S.2d 684 (1981) (a security agreement which describes collateral as all contract rights owned or hereinafter owned attached to a judgment on a contract claim as proceeds of the secured party's interest in all present and future contract rights).

■ Bistline's security interest in the promissory note automatically attached to any proceeds of the note as defined by Idaho statute, including any rights arising out of the note. The right to collect on a note and to file a suit for collection is both a general intangible and proceeds of the collateral. Adopting the reasoning of *Rainier*, Bistline's failure to state a security interest in all general intangibles in his SA is not fatal to his claim. Bistline's interest in the note was sufficient to attach an interest to the pending collection action as proceeds of the note. The district court erred in finding Bistline's interest did not attach.

---

1. Neither party requested additional record on Case No. CV–03–00130 other than the August 4,

The Karles argue that the Vissers did not have any rights in the promissory note at the time they executed the SA and that Bistline had no interest in the note. While the record indicates the Sheriff executed on only the ATA, the party's pleadings indicate they understood the execution to incorporate the promissory note. However, the record also includes a summary judgment decision that the note was enforceable as against the Karles. Without further explanation or record to rely upon[1], it appears the Vissers retained rights in the promissory note following the Sheriff's sale. Bistline created a valid and enforceable security interest in the promissory note which automatically attached to the pending action to collect on the note.

## IV.

## THE SECURITY AGREEMENT DID NOT LIMIT THE TYPES OF PROCEEDS TO WHICH BISTLINE'S SECURITY INTEREST WOULD ATTACH

The district court found that Bistline's SA limited the types of proceeds to which his security interest would attach. According to Bistline, proceeds are statutorily defined and if a party intends to limit the type of statutory proceeds to which its interest will attach, they must state an intent to do so in their security agreement. The Karles argue that the SA limited proceeds from the note to property acquired from the sale or transfer of the collateral or any judgments arising out of collection on the note.

The policy of the code with regard to sufficiency of description of collateral in a security agreement is liberal. Idaho Code § 28–9–108 (2001); *Idaho Bank & Trust Co. v. Cargill, Inc.*, 105 Idaho 83, 87, 665 P.2d 1093, 1097 (Ct.App.1983). Form shall not prevail over substance. *Id.* The Official Comment to Idaho Code § 28–9–108 states:

> The purpose of requiring a description of collateral in a security agreement under Section 9–203 is evidentiary. *The test of sufficiency of a description under this sec-*

2003 Judgment.

tion, as under former Section 9–110, is that the description do the job assigned to it: make possible the identification of the collateral described. This section rejects any requirement that a description is insufficient unless it is exact and detailed (the so-called 'serial number' test).

Official Comment, I.C. § 28–9–108(2)(2001)(emphasis added).

 Bistline took a valid and enforceable security interest in the promissory note which automatically attached to all statutorily defined proceeds of collateral. A party who seeks to limit the type of statutory proceeds to which its security interest will attach must state an intent to limit proceeds in the security agreement. Bistline did not state an intent to limit his security interest to specific statutory proceeds. Thus his interest attached to the pending lawsuit. This result is consistent with the letter and spirit of I.C. § 28–9–108. Bistline identified specific proceeds in the SA, including any judgments arising out of a collection action. That Bistline could somehow retain a security interest in a collection judgment but not the pending collection itself is illogical and contrary to the policy of I.C. § 28–9–108. Bistline's secured interest in the note automatically attached to the pending collection action. The district court's decision is reversed.

## V.

### CONCLUSION

The district court's decision is *reversed.* No attorneys' fees are awarded. The Vissers and Bistline are awarded costs.

Justices TROUT, EISMANN, BURDICK and JONES concur.

